J-A04014-23

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

| | | |
|---|---|---|
| VISIONARIES GROUP, LLC | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| Appellant | : | |
| | : | |
| | : | |
| | : | |
| v. | : | |
| | : | |
| | : | |
| | : | |
| CHRISTOPHER BENJAMIN SR. AND | : | No. 1118 MDA 2022 |
| LOUQUILLA THOMAS | : | |

Appeal from the Judgment Entered September 13, 2022
In the Court of Common Pleas of Dauphin County
Civil Division at No:  2021-CV-05065-CV

BEFORE:  STABILE, J., DUBOW, J., and McCAFFERY, J.

MEMORANDUM BY STABILE, J.:                    **FILED JUNE 08, 2023**

Appellant, Visionaries Group, LLC ("Visionaries"), appeals from a judgment entered against it and in favor of Appellees, Christopher Benjamin Sr. and Louquilla Thomas, in this declaratory judgment action.  Visionaries requested the court to enter a declaratory judgment that it has an ownership interest in real property situated at 128 Balm Street in Harrisburg ("the Property").  Following a bench trial, the court ruled that Visionaries was not a party to any transactions concerning the Property and therefore lacked a valid claim of ownership.  In its final conclusion of law, the court stated that Visionaries lacked "standing" to assert an ownership interest in the Property.  Visionaries argues that this conclusion was contrary to the weight of the evidence.  We disagree, and thus affirm.

On June 10, 2021, Visionaries, a limited liability corporation, filed a one-count complaint seeking a declaratory judgment against Appellees.  According

to the complaint, Visionaries purchased the Property in 2011 for $3,000.00.

Attached to the complaint was a deed dated October 28, 2011 conveying the

Property from David Allen to Visionaries for $3,000.00. In 2016, Visionaries'

principal, Ward Bond, learned that the Property was scheduled to be sold at a

sheriff's sale.[1] Bond could not attend the sale himself because he was in

Florida at the time. Bond asked Appellee Benjamin to attend the sale and

purchase the Property with funds that Bond gave to Benjamin with the

understanding that Benjamin would then convey the Property to Visionaries.

On May 26, 2016, Benjamin successfully purchased the Property in his own

name. Attached to the complaint was a deed to the Property dated May 26,

2016 from the Dauphin County Tax Claim Bureau to Benjamin. Instead of

conveying the Property to Visionaries, Benjamin moved into the Property and

filed another deed on July 9, 2020 naming himself and his paramour, Appellee

Thomas, as co-owners. Based on these allegations, Visionaries requested a

declaratory judgment that the May 26, 2016 and July 9, 2020 deeds are

fraudulent and void, and that Visionaries is the equitable owner of the

---

[1] Although the complaint labeled the sale as a "sheriff's sale," and although Bond described the sale as a "sheriff's sale" during his trial testimony, these appear to be misnomers. The Property was sold by the Dauphin County Tax Bureau apparently because of unpaid real estate taxes. Complaint, exhibit 1 (Tax Claim Bureau deed from Dauphin County Tax Claim Bureau, as grantor, to Appellee Benjamin). Thus, the proper term for this sale appears to be an "upset tax sale" pursuant to the Real Estate Tax Sale Law, 72 P.S. §§ 5860.101—5860-803. Indeed, on several occasions during trial, counsel for Appellant characterized the sale as an upset sale. ***See***, ***e.g.***, N.T., 1/25/22, at 59.

Property. Appellees filed a *pro se* answer to the complaint with several affirmative defenses.[2]

The court held a one-day non-jury trial during which Bond and Appellee Benjamin testified. Appellees represented themselves *pro se* during trial. Appellant was represented by counsel. Visionaries did not introduce the October 28, 2011 deed into evidence that was attached to Visionaries' complaint concerning conveyance of the Property from David Allen to Visionaries. Nor did Bond testify about this deed or this conveyance.

On May 20, 2022, the court entered Findings of Fact ("FOF"), Conclusions of Law ("COL") and an Order denying Visionaries' request for declaratory relief. The court made the following findings: Visionaries was created via corporate resolution in 2014. FOF at ¶¶ 1-2. The resolution did not authorize Visionaries to purchase the Property. *Id.* at ¶¶ 3-4. Although Bond claimed to have spent $32,000 in repairs on the Property, none of the invoices for the repairs identified Visionaries as the customer. *Id.* at ¶¶ 22-24. On May 24, 2016, Bond learned that the Property was about to be sold at sheriff's sale. *Id.* at ¶ 10. On the same date, Bond asked his friend, Appellee Benjamin, to purchase the Property at sheriff's sale. *Id.* at ¶¶ 9-10.

---

[2] Appellees did not raise the affirmative defense of the statute of limitations, even though more than four years had passed since between the May 26, 2016 deed from the Tax Claim Bureau to Benjamin and the date Visionaries commenced this action. Appellee Thomas mentioned the statute of limitations during trial, N.T., 1/25/22, at 33, but the court responded, "Well, I'm not going to get into a legal discussion here." *Id.* Thereafter, Appellees did not mention the statute of limitations or move to add the statute of limitations as an affirmative defense to the complaint.

The following day, May 25, 2016, Bond executed a letter to Benjamin "certify[ing] that Ward Bond, President of SCC Ward, Inc. is giving Christopher Benjamin $2000.00 for the sole purpose of purchasing the [P]roperty." *Id.* at ¶ 11. The heading on this letter was from SCC Ward, Inc. *Id.* at ¶ 12. On the same date, Benjamin made the winning bid on the Property and purchased the Property with a check to Dauphin County Tax Claim Bureau in the amount of $7,254.75 from the account of SCC Ward, Inc. *Id.* at ¶¶ 14-15. Bond failed to establish a relationship between SCC Ward, Inc., and Visionaries. *Id.* at ¶ 19. On June 28, 2018, Bond filed a mechanic's lien against the Property in his own name that made no reference to Visionaries. *Id.* at ¶ 25. On July 2, 2018, Bond sent Benjamin a letter demanding that the Property be transferred back to "my name," meaning Bond. *Id.* at ¶ 26. Bond's letter made no reference to Visionaries as owner of the Property. *Id.*

Based on these findings of fact, the court determined that there was no evidence that Visionaries authorized Bond to purchase the Property, COL at ¶ 3, or that any relationship existed between SCC Ward, Inc. and Visionaries, *id.* at ¶ 5. As a result, the court concluded that Visionaries was not a party to the transactions relating to the Property, *id.* at ¶ 7, and that Visionaries lacked "standing" to claim ownership in the Property, *id.* at ¶ 9.

Visionaries filed a timely post-trial motion requesting a new trial on the ground that the court's decision concerning standing was against the weight of the evidence. Post Trial Motions, 5/26/22, at ¶ 11. In support of this motion, Visionaries referenced the 2011 deed to the Property that it failed to

- 4 -

introduce into evidence during trial. *Id.* at ¶ 6. The court denied Visionaries' post-trial motions, and Visionaries appealed to this Court. Subsequently, Visionaries perfected its appeal by filing a praecipe reducing the court's decision to judgment. The trial court did not order Visionaries to file a Pa.R.A.P. 1925 statement of matters complained of on appeal.

Visionaries raises the following issues in this appeal:

1. Whether [Visionaries] has standing to assert an ownership interest in the subject property[,] 128 Balm Street, Harrisburg, Pennsylvania?

2. Whether the trial court committed reversible error in holding [Visionaries] lacked standing to assert an ownership interest in the subject property[,] 128 Balm Street, Harrisburg, Pennsylvania?

Visionaries' Brief at 2.[3] We address these issues together, because they both concern the issue of standing.

Visionaries' brief focuses on the single isolated reference to "standing" at the end of the court's decision. COL at ¶ 9 (Visionaries lacked "standing" to claim ownership in the Property). Visionaries claims that the conclusion that it lacked "standing" is contrary to the weight of the evidence, thus requiring a new trial. "This Court's review of a weight claim is a review of the trial court's exercise of discretion, not of the underlying question of whether we believe that the verdict is against the weight of the evidence." *Alwine v. Sugar Creek Rest, Inc.*, 883 A.2d 605, 611 (Pa. Super. 2005). Moreover,

---

[3] Appellees did not file a brief in this Court.

"[a] new trial will be granted on the basis that the . . . verdict is against the weight of the evidence only when the verdict is so contrary to the evidence as to shock one's sense of justice. In reviewing the trial court's refusal to grant a new trial on this basis, this Court reviews all of the evidence." *Id.*

Visionaries insists that the court improperly raised the issue of standing *sua sponte*, because Appellees never objected to Visionaries' standing before or during trial. In addition, Visionaries argues that it had standing because it had a substantial interest in this lawsuit as the actual owner of the Property. *See* Visionaries' Brief at 10 ("With respect to being substantial, [Visionaries] provided over $9,000.00 to Appellee to make the successful bid on the subject property. The Appellee paid nothing. Indeed, such payments were made to the Appellee after [Visionaries] had invested over $30,000.00 in the rehabilitation of the real property"). The court erred, Visionaries asserts, by disregarding the evidence of its ownership interest.

To begin, Visionaries makes far too much out of the trial court's isolated reference to "standing". The clear thrust of the court's decision was that Visionaries had no right to a declaratory judgment because it failed to prove an ownership interest in the Property. Read in context, the mention of "standing" was simply an alternative expression of the determination that Visionaries failed to demonstrate an ownership interest.

Furthermore, the court properly exercised its discretion in rejecting Visionaries' challenge to the weight of the evidence, since ample evidence

demonstrates that Visionaries did not have an ownership interest in the Property.

Visionaries was created via corporate resolution in 2014. Visionaries' Exhibit 1 (2014 corporate resolution dated April 25, 2014); N.T., 1/25/22 ("Tr."), at 4-5 (Bond's testimony identifying exhibit 1 as resolution establishing Visionaries). The resolution provided that Visionaries consisted of three members: James Baxter, Ward Bond and Stanford Griffith. Visionaries' Exhibit 1. Although Bond testified that Visionaries' purpose was to buy, rehabilitate and sell houses in Harrisburg, the court found that the resolution did not authorize Visionaries to purchase the Property but only authorized Visionaries to purchase real estate situated at a different address in Harrisburg, 1326 Howard Street. Visionaries' Exhibit 1. Neither Baxter nor Griffith testified during trial. Nor did Bond testify that Baxter or Griffith authorized him to purchase the Property on behalf of Visionaries. Bond claimed that Visionaries paid for $32,000 in work on the Property, Tr. at 26, and he introduced a group of invoices purporting to show repairs to the Property between June 2012 and September 2016. Tr. at 27; Visionaries' Exhibit 9. All of these invoices, however, identified Bond as the customer, not Visionaries. Visionaries Exhibit 9.

Bond testified that on May 24, 2016, while he was in Florida, he learned that the Property would soon be sold at sheriff's sale. Tr. at 6. On the same date, Bond contacted Benjamin, his close friend, and Benjamin promised to

bid on the Property at sheriff's sale.  Tr. at 7.  On May 25, 2016, Bond wrote a letter to Benjamin "certify[ing] that Ward Bond, President of SCC Ward, Inc. is giving Christopher Benjamin $2000.00 for the sole purpose of purchasing the [P]roperty."  Visionaries' Exhibit 3.  The heading on this letter was from SCC Ward, Inc.  *Id.*  The letter thus identified SCC Ward, Inc. as the intended purchaser of the Property, not Visionaries.  On the same date, Benjamin purchased the Property with a check that Bond wrote to the Dauphin County Tax Claim Bureau in the amount of $7,254.75 from the account of SCC Ward, Inc.  Tr. at 11; Visionaries' Exhibit 4.  There was no evidence presented that SCC Ward, Inc. had any relationship with Visionaries.

Two years later, on June 28, 2018, Bond filed a mechanic's lien against the Property in his own name that made no reference to Visionaries. Visionaries' Exhibit 6; Tr. at 18.  On July 2, 2018, Bond sent Benjamin a letter demanding that the Property be transferred back to "my name," meaning Bond.  Visionaries' Exhibit 5; Tr. at 16.  Bond's letter made no reference to Visionaries as owner of the Property.  *Id.*

This evidence furnished a sturdy basis on which to conclude that Visionaries had no ownership interest in the Property, since (1) its corporate resolution did not authorize the purchase of the Property, (2) the Property was purchased with a check from a different entity, SCC Ward, Inc., (3) funds used to repair the Property came from Bond in his individual capacity, not Visionaries, (4) Bond filed a mechanic's lien against the Property in his own

name, not on behalf of Visionaries, and (5) Bond demanded that Benjamin transfer the Property back to "my name," *i.e.,* to Bond himself, not to Visionaries.

As it did in its post-trial motion, Visionaries argues that the court failed to take into account the July 2011 deed conveying the Property from David Allen to Visionaries for $3,000.00. Visionaries cannot use this deed in support of its argument because it failed to introduce the deed into evidence during trial. While we must review "all of the **evidence**" in examining the court's refusal to grant a new trial, *Alwine*, 883 A.2d at 611 (emphasis added), the 2011 deed never became a part of the evidence as Visionaries' never introduced or moved the deed into evidence.

For these reasons, we conclude that the court acted within its discretion in denying Visionaries' post-trial motion.

Judgment affirmed.


Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary


Date: <u>06/08/2023</u>

- 9 -